HOLLOWAY, Chief Judge.
Appellant, Maxi Sales Company (“Maxi”), a creditor of the debtor in bankruptcy, appeals the judgment of the United States District Court for the District of Kansas (unpublished) affirming the bankruptcy judge’s denial of Maxi’s reclamation claim. Maxl Sales Co. v. Critiques, Inc. (In re Critiques, Inc.), 29 B.R. 941 (Bankr.D.Kan.1983). Maxl claims the court erred in its application of the Kansas Uniform Commercial Code (the “Code”),[1] by applying the proceeds provisions of § 84-9-306 to the facts of this case. Maxi argues the default provisions of §§ 84-9-501 through 84-9-508 should have been applied.
I
The facts relevant to this dispute must be set forth in considerable detail. Appel-lee Critiques, Inc. (“the debtor”) and Maxi entered into two separate transactions. On October 15, 1980, the parties entered into a consignment agreement and executed a security agreement with respect to this agreement on September 18, 1981. The security agreement named as its collateral “proceeds, accounts receivables, and intangibles of the debtor ... arising under a certain Consignment Agreement executed by and between the parties hereto and attached hereto as Exhibit ‘A’.” R. II 327. The security agreement further provided that “the secured party shall be entitled to immediate possession of all collateral secured hereunder with all property to be transferred to the possession of the secured party immediately upon the default of the debtor....” Id. The consignment agreement defined the consigned goods as “certain items of furniture, household goods, etc ... hereinafter referred to as ‘products’.” R. II 324. A corresponding financing statement filed September 22, 1981, listed “proceeds, accounts receivable and intangibles arising from a certain consignment agreement executed by Debtor and Secured Party.” R. II 329.
In the second transaction on August 31, 1981, the debtor executed a promissory note in the amount of $12,000 to Maxi. On the same day the parties entered into a security agreement concerning the note which listed as its collateral “inventory, furniture, fixtures, equipment, accounts receivables, and intangibles of the debtor ... together with any proceeds of such property.” R. II 233. A corresponding financing statement was filed on September 2, 1981, listing the same types of property but omitting the proceeds language contained in the security agreement.
The debtor defaulted on both security agreements. Subsequently, Maxi commenced proceedings to foreclose the security interests on November 23, 1981. On the same day, the State of Kansas filed a consumer protection complaint against the debtor. Thereafter, the state court issued a writ of attachment against the debtor’s property. On December 14, 1981, a receiver was appointed, pursuant to state law, to operate the debtor’s business for the purpose of generating sufficient revenues to satisfy all debts and claims that might exist. R. II 271. Maxi consented to the appointment of the receiver. The receiver was to hold in trust any net revenue. R. I 214.
When the receiver took possession of the debtor’s premises he did not discover, collect, nor liquidate any accounts receivable or intangible assets of the debtor. The debtor’s existing inventory, plus inventory purchased by the receiver, was liquidated at a public sale. It is undisputed that Maxi did not have a security interest in the inventory purchased by the receiver for the sale. It is also undisputed that the proceeds from the sale can be traced as to pre-existing inventory, pre-existing consignment inventory, and the inventory pur *1296 chased by the receiver for the liquidation sale.
Prior to establishing priorities and the distribution of the proceeds in the state court receivership, the debtor filed for bankruptcy under Chapter YII of the Bankruptcy Code and the state court proceedings were stayed. See 11 U.S.C. § 362(a). The funds from the liquidation sale were transferred to the trustee in bankruptcy and Maxi filed a complaint for reclamation in the bankruptcy court.
The bankruptcy court stated that Maxi’s argument for application of K.S.A. § 84-9-504 was without merit; that such section governs a secured party’s right to dispose of collateral after default; that the case was governed instead by K.S.A. § 84-9-306 dealing with a secured party’s interest in proceeds; and that the section virtually eliminated Maxi’s perfected security interest in proceeds of the collateral securing the $12,000 note because, under § 84-9-306(4), the cash must be viewed as commingled with other cash proceeds and there was no evidence that any cash proceeds were received by the debtor within the ten-day period before the bankruptcy petition was filed. The bankruptcy court also found that § 84-9-306(3) subordinated the interest of Maxi to the trustee with regard to the proceeds of the consignment inventory securing the consignment agreement. The court reasoned that Maxi’s security agreement and financing statement described only three types of collateral — accounts receivable, intangibles, and proceeds; that inventory was not included in either the security agreement or financing statement; and that Maxi, therefore, had no perfected security interest in the consignment inventory and could not have a perfected security interest in the proceeds of that inventory.
The district court affirmed the rulings of the bankruptcy court. It rejected the argument that the appointment of the receiver in the state trial court was a “disposition of collateral” under § 84-9-504, entitling Maxi to reduce its claim to judgment or to foreclose its interest by any available procedure under state law, Maxi contending that an available procedure provided by K.S.A. § 60-1301 was the appointment of a receiver for business. The court held that the bankruptcy court’s ruling subordinated the interest of Maxi to that of the bankruptcy trustee in accordance with law; and that the court could not resurrect an unper-fected security interest when the holder of that interest had failed to perfect under the provisions of the Code. Thus, the denial of the complaint for reclamation was affirmed, and this appeal followed.
II

Do the “proceeds” provisions of K.S.A. § 84-9-306 or the provisions of K.S.A. §§ 84-9-501 and 84-9-504 apply?

We first address Maxi’s contention that the bankruptcy court erred in applying the “proceeds” provisions of § 84-9-306 in the circumstances of this case. Maxi contends that its institution of foreclosure proceedings and the state court’s order in the consumer protection case of a receivership triggers the “default” provisions of §§ 84-9-501 through 84-9-508. Maxi argues that by consenting to the receivership, rather than foreclosing, the appointment was a “disposition of collateral,” entitling Maxi to reduce its claim to judgment or to foreclose by any available procedure under state law, and to reclaim the “dispositional proceeds.” State law authorizes the appointment of a receiver for a business. K.S.A. §§ 60-1301 through 60-1305 (1983). On the basis of this argument, Maxi would prevail, if it is correct, both as to the consignment security interest and the security interest in the promissory note.
To place our analysis in perspective, it must be recognized that the basic purpose of Article Nine of the Uniform Commercial Code is to “provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty.” Section 84-9-101 Official UCC Comment at 385 (1983). We must construe the provi *1297 sions of the Code in a manner that will promote this underlying purpose. In determining legislative intent, the courts are not bound to an examination of the language alone, but may properly look into the causes which impel a statute’s adoption, inter alia. See Petition of City of Moran, 238 Kan. 513, 713 P.2d 451, 456 (1986). But where statutes are plain and unambiguous, courts must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. Johnston v. Tony’s Pizza Service, 232 Kan. 848, 658 P.2d 1047, 1049 (1983).
The default provisions allow a secured creditor to “reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.” Section 84-9-501(1). Section 84-9-504 provides for the secured party’s rights to dispose of collateral after default. The secured party “may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.” Section 84-9-504(1). There is no definition of proceeds in the default provisions. In the Definitional Cross References under § 84-9-504, we are referred to “Proceeds” in § 9-306, which defines proceeds as follows:
“84-9-306. ‘Proceeds’: secured party’s rights on disposition of collateral. (1) ‘Proceeds’ includes whatever is received upon the sale, exchange, collection or other disposition of collateral....
We think the language of the statute is clear and hold that the bankruptcy court was correct in applying the “proceeds” provisions to the facts of this case. There is no dispute that state court enforcement procedures had been instituted, but these procedures were not completed. Had the foreclosure been completed and a final judgment been entered, or had the priorities been established and the proceeds been distributed in the receivership, Maxi would have had no reason to raise this novel issue.[2] However, the debtor’s filing of the bankruptcy petition intervened and caused the Bankruptcy Code and the further provisions of § 84-9-306 to control our resolution of the issues of Maxi’s rights to the proceeds of the liquidation sale.
Two primary questions remain: (1) whether Maxi had a perfected security interest in proceeds under each of the two security agreements; and (2) in the event such interest was perfected, we must determine whether the perfection survived the subsequent bankruptcy proceeding.[3] We turn to these questions.
Ill

The Consignment Agreement Security Interest

Before a security interest may be enforced against the debtor, certain formal requirements must be met. For an enforceable security interest to attach under Kansas law, the debtor must have signed a written security agreement which contains a description of the collateral. Section 84-9-203(l)(a). Second, the creditor must give value. Section 84-9-203(l)(b). Finally, the debtor must obtain rights in the collateral. Section 84-9-203(l)(c). We must determine, whether the language objectively shows that the parties intended to create a security interest. Section 84-9-102(l)(a).
The consignment security agreement was found to be defective by the bankruptcy judge in that it failed to include *1298 “inventory.” Inventory is defined in § 84-9-109(4). The principal test to determine whether goods are inventory is whether they are held for immediate or ultimate sale. Section 84-9-109 Official UCC Comment at 407 (1983). While the consigned goods may have been inventory in the hands of the debtor in this case, we find no strict requirement that inventory be listed as a term in the security agreement, and a reasonable approach to its interpretation should be utilized. See John Deere Co. v. Butler County Implement, Inc., 232 Kan. 273, 655 P.2d 124, 130 (1982). The security agreement executed between these parties with respect to the consigned goods incorporated the consignment agreement. Section 84-9-110 states that a description is sufficient, whether or not it is specific, if it reasonably identifies what is described. The consignment agreement contained language concerning “certain items of furniture, household goods, etc.” We conclude, that taken as a whole, the security agreement was sufficient so that a valid and enforceable security interest, as between the parties to the agreement, was created in the inventory assigned to the receiver upon his appointment.
We now must determine whether the security interest created in the inventory was perfected. Our resolution of this issue focuses on the sufficiency of the description of the collateral in the financing statement.[4] The collateral description in the security agreement defines the security interest as between the parties. The collateral description in the financing statement serves a different purpose as it is to give public notice of a security interest. Section 84-9-402 Kansas Comment at 471 (1983). Further, this section generally adopts a system of “notice filing.” Id. The 1983 Kansas Comment to § 84-9-110 states: “[T]he test of sufficiency is whether it makes possible the identification of the thing described for the benefit of third parties searching the files.... Even though the filing lack details, if it gives clues sufficient that third persons by reasonable care and diligence may ascertain the property covered, the courts should uphold the description.” Additionally, there is a consistent trend of leniency in the determination of the sufficiency of descriptions in financing statements. See United States v. Collingwood Grain, Inc., 792 F.2d 972, 974 (10th Cir.1986), John Deere Co. v. Butler County Implement, Inc., 232 Kan. 273, 655 P.2d 124, 130 (1982).
With these guidelines in mind, we turn to the specific statutory requirements. The Code requires the financing statement to contain a statement indicating the types, or describing the items, of collateral. Section 84-9-402(1). Is the description of collateral in the financing statement sufficiently specific to satisfy the requirements of a statement of “item” or “type?” The financing statement filed with respect to this transaction was a standard form and listed “proceeds, accounts receivable and intangibles arising from a certain consignment agreement....” The security agreement was not attached nor publicly filed. The consigned goods were household goods, furni *1299 ture, etc., and were held by the debtor as inventory as they were “held by a person who holds them for sale_” Section 84-9-109(4).
The Code specifically provides that a financing statement must identify the “type” or “items” in reference to the collateral in which the statement is to perfect an interest. The phrase in § 84-9-402(1) is worded in the alternative, permitting the financing statement to include the types or refer to the items of collateral.[5] The drafters of that section necessarily intended for there to be two means of identifying collateral. See, e.g., In re Fugua, 461 F.2d 1186, 1188 (10th Cir.1972).
The Kansas legislature amended § 84-9-402 to provide that the generic descriptions of collateral as defined by § 84-9-109 would be adequate for a statement of the collateral in a financing statement.[6] We interpret this to mean that a creditor cannot comply with § 84-9-402(1) by identifying collateral any less specifically than by reference to the categories of personal property defined by § 84-9-109.
We think that Maxi’s financing statement was inadequate to perfect a security interest in the inventory. While it would have perfected an interest in accounts receivable or general intangibles, there is no “red flag” or “notice” given to subsequent file searchers that an interest in the inventory was taken by “a minimal financing statement filing.” Tri-State Equipment Co., Inc. v. Allis-Chalmers Credit Corp., 792 F.2d 967, 971 (10th Cir.1986). As the interest created was not perfected, it was therefore subordinated to the intervening claim of the bankruptcy trustee.[7] See 11 U.S.C. § 544(a)(1) and K.S.A. § 84-9-301(l)(b).
IV

Security Interest in Promissory Note

Our analysis of the second transaction requires our interpretation of the proceeds provision of the Code. See § 84-9-306. This section controls the validity of a security interest in proceeds. The security interest with respect to the promissory note was duly perfected by the filing of the financing statement. We hold, however, that Maxi did not retain its secured status.
Section 84-9-306(2) provides “[e]xcept where this article otherwise provides, a security interest continues in collateral ... and also continues in any identifiable proceeds including collections received by the debtor.”[8] The Code does not define “identifiable proceeds” nor give guidance as to what evidence a party must produce in order to prove that certain cash represents identifiable proceeds of collateral. Courts have used the “tracing concept” borrowed from trust law to fill such gaps in the U.C.C. The Kansas Comment 1983 to § 84-9-306(2) recognizes this concept. See Tuloka Affiliates, Inc. v. Security State Bank, 229 Kan. 544, 627 P.2d 816 (1981) (recognizing that funds deposited in a bank account may be identifiable cash *1300 proceeds); See, e.g., Michigan Nat’l. Bank v. Flowers Mobile Home Sales, Inc., 26 N.C.App. 690, 217 S.E.2d 108 (1975); Universal C.I.T. Corp. v. Farmers Bank of Portageville, 358 F.Supp. 317 (E.D.Mo.1973); Brown and Williamson Tobacco Corp. v. First Nat’l. Bank, 504 F.2d 998 (7th Cir.1974). We note that this common law method of tracing has generally been limited to cases not involving insolvency proceedings.
Section 84-9-306(4) provides for proceeds disposition in the event of insolvency.[9] This section states:
In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
(a) in identifiable noncash proceeds and in separate deposit accounts containing only proceeds;
(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;
(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and
(d) in all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) ... is limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten (10) days before the institution of the insolvency proceedings ....
Id. (emphasis added).
While the Code has not eliminated common law tracing principles in situations not involving insolvency, we conclude that the specific provisions of § 84-9-306(4) control our determination in this case. See In re Gibson Products of Arizona, 543 F.2d 652, 655 (9th Cir.1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977); J. White & R. Summers, Uniform Commercial Code § 24-6, at 1011-13 (2d ed. 1980). The Official Comment to § 84-9-306 states that under prior law, whatever the formulation of the rule, the secured party, if he could identify the proceeds, could reclaim them. This section provides new rules for insolvency proceedings. Paragraphs 4(a) through (c) substitute specific rules of identification for general principles of tracing. Paragraph 4(d) limits the security interest in proceeds not within paragraphs 4(a) through (c) only to an amount of the debtor’s cash and deposit accounts not greater than the cash proceeds received within ten days before the insolvency proceedings. “The grant of a security interest in commingled funds under section [84-]9-306(4)(d) is not an expansion of the pre-Code right of a secured creditor to trace proceeds from the disposition of secured collateral into such funds; instead, it is a substitution for and a limitation upon that right.” Fitzpatrick v. Philco Finance Corp., 491 F.2d 1288, 1292 (7th Cir.1974) (citations omitted). The drafters of the Code apparently believed that these hard and fast rules of identification were preferable to the imprecise and time consuming tracing theories. Thus, the fact that certain commingled cash proceeds can be identified is immaterial in the context of an insolvency proceeding.
Applying these rules to the facts of this case, the funds generated by the liquidation sale were deposited in an ac *1301 count and commingled with funds that were generated by the sale of inventory in which Maxi did not have a security interest. Therefore, the only provision applicable is § 84-9-306(4)(d). However, there was no evidence presented here as to what amounts, if any, were proceeds received by the debtor within ten days before the institution of the bankruptcy proceeding. Therefore under this provision, the limitation on common law tracing extends to all funds which have been commingled regardless of whether they are identifiable. We therefore hold that Maxi has no claim to the proceeds generated by the liquidation sale. This may appear to be a harsh result. Maxi, however, could have protected itself by conditioning its consent to the receiver’s use of its secured property. Had the funds been separated, identifiable, and not commingled, the secured party could have avoided the § 84-9-306(4)(d) limitations.
AFFIRMED.

. The Kansas Uniform Commercial Code will be cited hereinafter by section number. The Kansas legislature adopted the 1972 Official Text version of Article 9 in 1975 (Chapter 514, 1975 Session Laws). Any relevant changes will be discussed.

. We note the general rule of law is that appointment of a receiver does not determine any rights nor destroy any liens. The receiver merely becomes an assignee of the insolvent, having exactly the same rights that he had. See Cates v. Musgrove Petroleum Corporation, 190 Kan. 609, 376 P.2d 819, 821 (1962). We do not see the appointment of a receiver as then a "disposition of collateral” as Maxi would have us hold, nor do we think a receiver, standing in a debtor's shoes, should be required to assume a secured party’s obligation to protect his security interest.

. 11 U.S.C. § 552(b) provides for post-petition effect of a security interest and provides that if the security agreement extends to proceeds, product, offspring, rents, or profits of the property in question, then the proceeds would continue to be subject to the security interest.

. There were two security agreements executed between these parties and two corresponding financing statements filed. The first financing statement filed was with respect to the promissory note. This financing statement included inventory in its listed collateral. The Official Comment to § 84-9-402 observes that this section adopts "notice filing” and is intended to indicate that the secured party may have a security interest in the collateral. The comment also states that a financing statement may even secure future advances and may encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed if the description of collateral in the financing statement is broad enough to encompass them. See, e.g., Allis Chalmers Credit Corp. v. Cheney Investment, Inc., 227 Kan. 4, 605 P.2d 525 (1980).
We note that there is no future advances issue in the instant case, nor is there a claim of merger or amendment of these separate transactions. The intent of the parties, as manifested by the terms of the writings in issue, shows no intent that the promissory note filing statement was to perfect any other security interest. Each transaction utilizes different terminology in describing the collateral. There has been no showing that the first filed financing statement perfected the security interest created with regard to the consignment agreement.

. A detailed itemization of collateral would be impractical when the collateral is inventory because the specific items comprising inventory are constantly turning over. See 1 G. Gilmore § 15.3, at 479.

. The amendment provides "A statement of collateral in a financing statement is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. § 84-9-109, or generally identifies other collateral by one or more of the following classifications: fixtures, documents, instruments, general intangibles, chattel paper or accounts." Ch. 438, Kan.Sess. Laws 1978.

. We note that cases recently decided by this court holding that financing statements met the statutory requirements, involved descriptions of collateral with more particularity than the financing statement with which we are presently concerned. See Tri-State Equipment Co., Inc. v. Allis-Chalmers Credit Corp., 792 F.2d 967; United States v. Collingwood Grain, Inc., 792 F.2d 972 (10th Cir.1986).

.That the financing statement did not include "proceeds" is irrelevant to our determination of this issue as it is no longer necessary to claim proceeds as part of the collateral. Maxi had a security interest in the proceeds whether or not it expressly listed proceeds in the financing statement subject to the requirements set out in § 84-9-306(3). Section 84-9-306(2) and (3).

. The dissent argues that the appointment of the receiver under State law can be construed as an institution of insolvency proceedings. Thus, according to the dissent, the ten-day period under § 84-9-306(4)(d) is to run from the date of the appointment of the receiver rather than from the filing of the bankruptcy petition. We agree with the dissent that the phrase “insolvency proceedings” in § 84-9-306(4) is not restricted to federal bankruptcy proceedings. However, whether the insolvency proceedings in this case were deemed instituted when the receiver was appointed or when the bankruptcy petition was filed is irrelevant. Maxi offered no proof as to the amount of proceeds received by the Debtor within ten days preceding either date.