**In re PETROLEUM PRODUCTS, INC., A Nevada Corporation, f/k/a Burke Energy Corporation, Debtor.**

**Bankruptcy No. 86-41309.**

United States Bankruptcy Court, D. Kansas.

April 6, 1987.

---

8.

(a) $426.00 × 12 mos. = $5,112.00
(b) $5,112.00 less Trustee's commission of 10% ($511.20) = $4,600.80

Dale L. Somers, Eidson, Lewis, Porter & Haynes, Jan M. Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., John T. Flannagan, Olathe, Kan., for debtor.

Josiah M. Daniel, III, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., David C. Adams, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for MBank.

Carol A. Park, Wichita, Kan., U.S. Trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the Court on an Ex Parte Application of Debtor for Extension of Time to Assume or Reject Unexpired Lease of Nonresidential Real Property and the Objection of MBank Dallas to Ex Parte Application and Order Extending Period for Assumption of Leases, Motion for Rehearing and Request for Relief. This matter came on for hearing before this Court on December 18, 1986, and thereafter the parties submitted supporting briefs.

The Debtor is represented by Dale L. Somers of Eidson, Lewis, Porter & Haynes, John T. Flannagan, and Jan M. Hamilton of Hamilton, Peterson, Tipton & Keeshan. MBank is represented by Josiah M. Daniel, III of Winstead, McGuire, Sechrest & Minick and David C. Adams of Morris, Laing, Evans, Brock & Kennedy.

The following issues are presented to this Court for its consideration:

(1) Whether a lease, which has been established according to the specific conditions of the Kansas industrial revenue bond statutes, is a lease or a mortgage.

(2) Whether, if the leases are true leases, Debtor is entitled to an extension of time within which to assume or reject.

## FINDINGS OF FACT

1. From 1979 through 1982 Debtor constructed an isomerization plant and hydrogen unit (hereinafter "the Facility") on land located near the city of McPherson, Kansas, which the Debtor had leased from MAPCO (hereinafter "MAPCO Ground Lease").

2. MBank's predecessor provided interim construction financing to the Debtor with the expectation of takeout through industrial revenue bond financing.

3. On June 16, 1980, by resolution, the City of McPherson authorized a letter of intent, pursuant to § 12–1744e of the Economic Development Revenue Bond Act, K.S.A. 12–1740, et seq. to issue revenue bonds to Debtor's affiliate and predecessor for the purpose of providing funds to pay the cost of constructing the Facility.

4. The specific form of the IRB transaction was detailed in a bond ordinance, passed and approved by the City on August 23, 1982, and which complies with the Economic Development Revenue Bond Act.

5. On or about August 27, 1982, the City of McPherson issued the industrial revenue bonds in two series. Series A, in the amount of $1 million, related to the financing of the hydrogen unit. The interest income from this series is exempt from federal income taxation. Series B, in the amount of $9 million, relates to the financing of the isomerization plant. The interest on the Series B bonds is not exempt from federal income tax. The terms of both issues are ten years, or until the bonds are retired.

6. MBank purchased both Series A and Series B bonds, and the proceeds of the purchase were used to satisfy the interim construction financing extended by MBank.

7. Upon the City's issuance of the IRBs, Debtor transferred its title to the Facility to the City.

8. Debtor also assigned its lessee's interest in the MAPCO Ground Lease for the period of ten years to the City. The annual rental for this period was prepaid by Debtor prior to the assignment to the City.

9. The amortization schedule for the Series A bonds provided for semi-annual payments of $50,000 plus interest. Quarterly payments of at least $375,000 were required to be paid on the Series B bonds, with accrued interest or 80% of the operating cash flow from the Facility, whichever was greater. Payments were to be made directly to the City's appointed fiscal agent, MBank.

10. Pursuant to the bond ordinance, the City entered into two lease agreements with Debtor, both dated August 27, 1982. The leases were executed pursuant to K.S.A. 12–1742. The first covers the lease of the hydrogen unit to Debtor, while the second covers the lease of the isomerization plant to Debtor (hereinafter the "Leases").

11. Both Leases grant Debtor a leasehold interest in the improvements for a basic term of ten years or until the IRBs and all interest on them has been paid. The leases call for rent in amounts equal to that required for amortization of the IRBs over the ten year period.

12. Under both Leases, the Debtor has the option to purchase any improvements during the basic terms of the Leases upon payment of the full amount required for the redemption of the IRBs, plus $100 for each bond issued.

13. If the Leases run for the full term of ten years and are redeemed at that time, title to the Facility is to be transferred to Debtor upon the payment of the $100 option price.

14. As security for repayment of the IRBs, the City assigned its lessee's interest in the MAPCO Ground Lease, as well as its lessor's interest in the Leases to MBank. The City continues to hold legal title to the Facility, and retains a reversionary interest.

15. In December, 1983, Debtor was behind in its payment of principal and interest on both Series A and B of the IRBs, as well as on loans made by MBank directly to Debtor. MBank and Debtor agreed to re-

structure the repayment of the IRBs and additional security was pledged to secure the repayment of the IRBs. A cross-default provision was added to the restructure agreement also.

16. On December 30, 1983, the City, by Ordinance 2155, amended the Leases in order to reflect portions of the restructuring agreement between MBank and Debtor. The City received a legal opinion that the Leases were amended in accordance with amendment provisions of the Leases.

17. Debtor again fell behind in its payment of principal and interest on the Bonds. On April 30, 1986, MBank demanded payment of the balances due in order to cure default on the IRBs. No payment was received.

18. On September 17, 1986, Debtor filed for relief under Chapter 11.

19. Since filing bankruptcy, the Debtor has failed to make any payments of rent due under either of the Leases. Calculated on a pro rata basis, the rent accrues at a rate of $141,666.66 per month.

20. On November 6, 1986 Debtor filed an Ex Parte Application for Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property, in which the Debtor requested additional time in which to assume or reject pursuant to 11 U.S.C. § 365(d)(4). However, Debtor reasserted its previously stated position that "any purported leases connected with the City of McPherson, Kansas, Industrial Revenue Bonds issued on behalf of Debtor are security agreements and not leases within the scope of § 365."

21. This Court entered the Ex Party Order on November 14, 1986, granting Debtor's application for an extension of time, subject to the rights of any interested party to object to the relief granted.

22. MBank filed an Objection to the Ex Parte Application and Order and a Motion for Rehearing and Request for Relief. MBank argued that the leases qualify as true leases under § 365(d)(4) and that such Leases have been rejected by Debtor, as lessee, because an extension of time within which to assume or reject was not properly obtained.

## CONCLUSIONS OF LAW

I. Is a lease, which has been established according to the specific conditions of the Kansas Industrial Revenue Bond statutes, a lease or a mortgage?

In support of its contention that the Leases are not subject to the assumption/rejection requirements of § 365, Debtor has made a number of arguments, which include the following:

(a) The Leases should not be considered executory contracts or unexpired leases under § 365 because application of that section in this instance will defeat rehabilitation of the Debtor pursuant to Chapter 11.

(b) The Leases are not executory contracts or unexpired Leases under § 365 because lessor has fully performed.

(c) The Leases, when analyzed in light of a number of factors, including the economic realities test, constitute a financing arrangement rather than true leases.

To bolster its position, Debtor has referred this Court to a number of bankruptcy court decisions from other jurisdictions.

While the interpretation of § 365 is certainly a matter of federal law, federal courts must look to state law to determine whether an agreement is an unexpired lease, subject to the assumption/rejection requirements of § 365, or a financing arrangement falling outside the scope of § 365. *See* H.Rep. No. 95–959, 95th Cong., 1st Sess. (1977), 314 US. Code Cong. & Ad.News 1978 (PP 5787, 6271; *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Our inquiry must thus begin with an examination of the Kansas Economic Development Revenue Bond Act under whose authority the Leases were created.

The purpose of the Economic Development Revenue Bond Act is set forth in K.S.A. 12–1740 and provides:

It is the purpose of this act to promote, stimulate and develop the general wel-

fare and economic prosperity of the state of Kansas through the promotion and advancement of physical and mental health, industrial, commercial, agricultural, natural resources and a recreational development in the state; to encourage and assist in the location of new business and industry in this state and the expansion, relocation or retention of existing business, industry and health development; and to promote the economic stability of this state by providing greater employment opportunities, diversification of industry and improved physical and mental health, thus promoting the general welfare of the citizens of this state by authorizing all cities and counties of the state to issue revenue bonds, the proceeds of which shall be used for the purpose of paying all or part of the cost of purchasing, acquiring, constructing, reconstructing, improving, equipping, furnishing, repairing, enlarging or remodeling facilities for agricultural, commercial, hospital, industrial, natural resources, recreational development and manufacturing purposes and to enter into leases or lease-purchase agreements with any person, firm or corporation for such facilities.

K.S.A. 12–1740. K.S.A. 12–1741 authorizes any city to issue revenue bonds and to enter into leases or lease-purchase agreements by ordinance in order to achieve these purposes. The agreements must provide for a rental sufficient to repay the principal of and any interest on the revenue bonds. K.S.A. 12–1742. The cities' power is limited, however, in that "nothing in [the Act] shall be so construed as to authorize or permit any city or county to make any contract or to incur any obligation of any kind or nature except such as shall be evidenced by the issuance of revenue bonds payable solely out of the rentals received from such facilities." K.S.A. 12–1743.

All revenue bonds issued by cities under the Act and all income or interest therefrom shall be exempt from all state taxes except inheritance taxes. K.S.A. 12–1746. In order to qualify for tax exempt treatment, the revenue bonds must recite the authority under which they are issued, and must be issued in conformity with the provisions, restrictions and limitations of the Act. Additionally, such bonds and the interest thereon must be paid from the money and revenue received from the fees charged and rental received from the use of the property and facilities constructed by the proceeds, in whole or in part, of such revenue bonds when issued and sold. K.S.A. 12–1747.

Any city in Kansas, which issues IRBs by exercising the powers granted through the Kansas Economic Development Revenue Bond Act, does so for a unique purpose: to promote the "economic prosperity" of Kansas, and to "promote economic stability." K.S.A. 12–1740. In order to insure the continuing general soundness of the IRBs issued pursuant to authorization of the Act, the Kansas legislature has placed strict limits on the scope of the cities' authority. Under the Act, cities are not authorized to lend bond proceeds directly to private industrial companies. Instead, cities may only borrow money and deal in real property as owner or lessor, not as mortgagor or grantor. *See* K.S.A. 12–1743.

Both Debtor and MBank have cited three Kansas Supreme Court decisions, which take note of the public policy concerns involved in issuing IRBs, and which this Court finds controlling in this instance. Two cases, *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs.*, 235 Kan. 958, 685 P.2d 866 (1984) and *City of Lenexa v. Board of County Comm'rs.*, 237 Kan. 782, 703 P.2d 800 (1985) concern the Kansas mortgage registration tax. In *Misco*, the City of Wichita, Kansas, by ordinance issued $7 million in industrial revenue bonds for the construction of an office building. The cost of construction was to be paid from the proceeds of the industrial revenue bonds and the bonds were to be retired solely from the rental and revenue produced by the building. Misco Industries, Inc. agreed to pay the city rental on the building pursuant to the terms of the lease entered into between the City and Misco again under the authority granted by the ordinance. The lease provided that

Misco could exercise an option to purchase the building free and clear of all liens and encumbrances. 235 Kan. at 959, 685 P.2d 866. As a condition of filing a Notice of lease agreement, the Sedgwick County Register of Deeds required payment of a mortgage registration tax. Misco Industries, Inc. paid the tax under protest and then filed an action against the Board. The Board claimed that the Notice filed by Misco was a mortgage, and therefore subject to the payment of the mortgage registration tax. The trial court concluded that the Notice in question was not a mortgage nor a real estate contract and no mortgage registration tax was due or payable. The Board appealed the decision to the Supreme Court. *Id.* 235 Kan. at 960, 685 P.2d 866.

The Kansas Supreme Court first noted that the lease in question and the Notice were products of the ordinance enacted by the City for the issuance of the industrial revenue bonds. It then examined the terms of the lease between the City and Misco in order to determine whether the parties intended to create a mortgage on the property. The Court interpreted the option to purchase contained within the lease in light of K.S.A. 79–3101, which relates to executory contracts for the sale of real property. Under that statute in order for there to be an executory contract, the grantor must hold legal title to the property as security for the unpaid purchase price. When the grantee or vendee completes the payments required under the contract, he automatically obtains title to the real estate. *Id.* at 965, 685 P.2d 866. In contrast, the court found that the option to purchase property under the lease agreement was only an offer to sell. The court stated:

> Unless and until Misco notified the City it intended to exercise its option, and performed certain requirements under the written agreement, the City remained the owner of the property subject to any outstanding industrial revenue bonds. An option to purchase is usually described as a contract. It is not such until accepted by the optionee. Until accepted it is only a continuing offer to sell and

convey at a price and upon conditions specified.

*Id.* at 965, 685 P.2d 866. The Court further stated:

> Misco's agreement with the City was not an executory contract for the purchase of real estate, and therefore subject to the mortgage registration fee, but a lease agreement with an option to purchase the real estate. Misco's lease with the City containing an option to purchase was not subject to the mortgage registration fee.

*Id.* at 966, 685 P.2d 866.

In *City of Lenexa, supra,* the Kansas Supreme Court was again faced with determining the applicability of the Kansas mortgage registration tax to an IRB lease. The court stated:

> As noted previously, in *Misco* we specifically held lease arrangements arranged in accordance with the industrial revenue bond statutes are leases, not mortgages. The record in this case reveals the leases in question were established pursuant to the industrial revenue bond statutes and, therefore, we are bound by our decision in *Misco. The leases in this case are not mortgages,* and are therefore not subject to the mortgage registration fee.

237 Kan. at 784–85, 703 P.2d 800. (emphasis added).

Debtor argues that *Misco* and *City of Lenexa* are irrelevant to the present controversy. In support of its contention, Debtor points out that the court in *Misco* reasoned that if a mortgage existed it would have been between the holder of the industrial revenue bonds and the City, as owner of the property, and not between the City and Misco, the industrial lessee who was charged the registration fee. This Court is not convinced that the foregoing statement, which is dicta, somehow makes the Kansas Supreme Court's decision in *Misco* irrelevant. Clearly, under the provisions of the Act, the City of Wichita was prohibited from assuming the role of a mortgagee in connection with issuing IRBs. The *Misco* court was simply identifying the only logical mortgagee/mortgagor relationship that could have existed since it presumed, as required by the Act, that the City of Wichita was the true owner of the

property and an actual lessor of a true lease between the City and Misco. Debtor also argues that *Misco* is irrelevant because the Kansas Supreme Court reasoned that the presence of an option to purchase the property at the termination of the lease term precluded the finding of an executory contract for the purchase of real property. The Debtor, however, does not accurately state the Supreme Court's conclusion. The Supreme Court concluded that the option to purchase, *until accepted,* remained a continuing offer. The offer could not be accepted until Misco complied with certain conditions set forth in the lease agreement, which was drafted in accordance with the provisions of the Act. In an effort to discredit the precedential value of *City of Lenexa,* the Debtor argues that the Kansas Supreme Court's holding in *City of Lenexa* was determined as a matter of public policy rather than as a result of an analysis of the true character of the transactions involved. The Debtor simply states: "there is nothing unique about IRB financing or about this transaction," which calls for such special treatment. Obviously, the Kansas Supreme Court disagrees with the Debtor, and this Court is also bound to do so.

The character of an IRB lease was again examined by the Kansas Supreme Court in *In Re City of Moran,* 238 Kan. 513, 713 P.2d 451 (1986). That case concerned the priority battle between the City of Moran, which had issued IRBs and entered into a statutory lease-purchase agreement with The Farmers Cooperative Association, and The Wichita Bank, a secured creditor of the Cooperative. 238 Kan. at 514, 713 P.2d 451. The Bank contended that the lease-purchase agreement between the City and the Cooperative was actually an installment sale covered by the filing and perfection requirements of the UCC. It claimed that the industrial revenue bond statutes intended that such transactions would be covered by Article 9 of the UCC. *Id.* at 518–19, 713 P.2d 451.

Initially, the Supreme Court suggested that various sections of the UCC might prove helpful in determining the character of the transaction. Under the UCC, whether a lease is intended as security is to be determined by the facts of each case. An agreement that, upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make a lease one intended for security. *Id.* at 519, 713 P.2d 451 citing K.S.A. 84-1-201(37). The *Moran* court, however, never applied 84-1-201(37) to the facts before it. If it had, as it has done in cases concerning equipment and like personalty, it surely would have found that the financing arrangement between the City and "lessee" was, in fact, a mortgage. Instead, the court determined that the Kansas legislature, in enacting the industrial revenue bond statutes, intended that such transactions be excluded from Article 9 of the UCC as a matter of public policy. *Id.* at 519, 713 P.2d 451.

In this Court's view, the *Moran* court, though referring to public policy considerations as the basis of its decision, fails to elucidate on the possible policy reasons. (*See* 238 Kan. at 521, 713 P.2d 451 in which the court states that bondholders would have to depend upon the issuing city to file the financing statement if the transactions are found to be mortgages.) We find that the IRB statutes themselves provide a clear explanation of the relevant policy concerns.

One of the stated purposes of industrial revenue bonds under the Act was to develop the economic prosperity of the state by providing greater employment opportunities and developing industry. To achieve that purpose the legislature gave cities the power by ordinance to enter into leases or lease-purchase agreements for the facilities, but not the power to enter into a mortgagee/mortgagor relationship. In any event, we agree with the *Moran* court's conclusion:

> Where a city or county, under the Economic Development Revenue Bond Act, owns a facility which includes the land, furnishings and equipment, and leases it for a period of years at a stipulated rental under a lease-purchase agreement which contains a stipulation that the lessee shall have the right, during or at the expiration of the agreement, to purchase the facility, if the lessee so elects, at a

fixed price, there is no complete sale. The lessee does not acquire an estate beyond the lease interest until he has elected to accept the offer and has paid or tendered the purchase price set out in the lease-purchase agreement. A lease-purchase agreement created under the Economic Development Revenue Bond Act is not subject to the filing requirements of the UCC.

*Id.* at 521–22, 713 P.2d 451.

Debtor urges this Court to look beyond the black letter expressions of legislative intent and public policy contained within the Act in order to examine the true nature of the transaction by applying various provisions of the UCC. Were we to do so, we would most surely find that the Leases in question are, in fact, true mortgages. We recognize that generally, application of § 84-1-201(37) and the economic realities test would be appropriate to determine the true character of an interest in personal property. In this instance, however, the Kansas Supreme Court has recognized its legislature's intent to create an exception to this general rule. For public policy reasons, the Kansas Supreme Court has held that IRB lease-purchase agreements must fall outside the scope of the UCC and that the economic realities test is thus inapplicable to them. While the Kansas court has failed to fully explain these concerns of public policy, we find that they are no less valid or compelling.

Were we to deem the Leases mortgages, the City of McPherson would assume the status of mortgagee, in direct violation of the Act's provisions. *See* K.S.A. 12-1743. The state tax exemptions provided by the Act would be lost and the City of McPherson, as well as other cities in Kansas issuing IRBs under the Act, would lose much of their power in attracting new industry to Kansas. Debtor argues that since the exemption from ad valorem taxation, as well as other types of taxation, is statutorily set for ten years, it will not be adversely affected by this Court's decision that the Leases are actually mortgages. We must disagree. Holders of IRBs and lessees of property constructed with the proceeds of such bonds receive favorable tax treatment

*because* the City owns the property so leased, as prescribed by the provisions of the Act. In order for this favorable treatment to continue, the form of the bonds must always comply and all parties involved in the bond issuance must continue to act in accordance with these statutory provisions. In sum, the City must not become or be deemed a mortgagee of property constructed with proceeds of a bond issuance simply because, for reasons of public policy, it is forbidden by statute to do so.

Debtor has raised a number of arguments in support of its position that these Leases are actually mortgages. Unfortunately for Debtor, the Court finds it unnecessary to explore these arguments further, as it finds Kansas statutory and case law to be dispositive of this issue. In *Misco, City of Lenexa,* and *City of Moran,* the Kansas Supreme Court specifically held that lease agreements arranged in accordance with the industrial revenue bond statutes are leases, not mortgages. The record in this case clearly reveals that the leases in question were established pursuant to the industrial revenue bond statutes, and therefore, this Court is bound by the decisions of the Kansas Supreme Court. The Leases in this case are not mortgages, they are true leases and thus subject to the assumption/rejection requirements of 11 U.S.C. § 365.

II. Is the Debtor entitled to an extension of time in which to assume or reject the Leases?

▇ Section 365(d)(2) of the Code governs the assumption/rejection of a debtor's interest in an unexpired lease of personal property. It provides:

In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an *executory contract* or *unexpired lease of residential real property or of personal property* of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a

specified period of time whether to assume or reject such contract or lease. 11 U.S.C. § 365(d)(2). Sections 365(d)(3) and (4) apply to unexpired leases of nonresidential real property and place strict time limitations on the assumption of that type of lease. The Court finds that the Facility Leases are leases of personalty. The MAPCO Ground Lease is a lease of nonresidential real property. The three leases are not unitary. Accordingly, time limitations on the assumption of the Facility Leases are governed by § 365(d)(2).

As previously noted, § 365(d)(2) allows the court on request of a party to fix a time within which to assume or reject. MBank has objected to Debtor's ex parte application for an extension of time within which to assume or reject, claiming that it was not entitled to an extension because it had failed to comply with § 365(d)(3) and (4). The essence of MBank's objection is that Debtor has failed to pay rent, which accrues at the rate of approximately $140,000 a month, since filing its petition and has given no indication that it even has the capability of paying such rent, which it would be required to do by § 365(b)(1) if it intends to assume the Leases in question. Each monthly rental payment is substantial and will continue to become due, if time to assume is not modified, as long as Debtor is without a confirmed plan. Presently, it appears unlikely that a plan could be confirmed in this case within the next six months. At that time Debtor could owe as much as $1,000,000 in post-petition rent. It is difficult to see how Debtor could cure this obligation without obtaining outside financing. If financing must be obtained in any event, it could just as easily be obtained now as later. If Debtor cannot cure now without outside financing, it very likely will not be able to effect a cure after an additional six months have passed. The Court agrees that it is appropriate to set a specific time within which the Debtor must assume or reject in accordance with § 365(d)(2). The Court, in modification of its earlier Order of November 14, 1986, grants Debtor sixty (60) days from the date of this Order within which to comply with § 365(b)(1), provided that if Debtor fails to so comply, the Lease shall be deemed rejected and Debtor shall immediately surrender the leased property to MBank.

Accordingly, this Court holds that the IRB Leases are true leases subject to 11 U.S.C. § 365 and the Leases must be assumed or rejected in accordance with § 365(b)(1) within sixty (60) days from the date of this Order, provided that if Debtor fails to so comply, the Leases shall be deemed rejected and Debtor shall immediately surrender the leased property to MBank.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.