**Matthew BALLINGER, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

2012–SC–000694–DG

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

COUNSEL FOR APPELLANT: Shannon Renee Dupree, Assistant Public Advocate.

COUNSEL FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Heather Michelle .Fryman, Assistant Attorney General.

## OPINION OF THE COURT BY JUSTICE ABRAMSON

Kentucky Revised Statute (KRS) 189A.010, the Driving Under the Influence (DUI) statute, outlaws the operation or physical control of a motor vehicle under a number of circumstances the General Assembly has determined pose a substantial risk of impaired driving.[1] Any person who violates those proscriptions is subject, for a first offense, to a fine between $200 and $500, to incarceration in the county jail for anywhere from two to thirty days, or in lieu of fine or incarceration to two to thirty-days service in a community labor program. KRS 189A.010(5)(a). For subsequent offenses within five years of the first one, the penalties become gradually more severe, until "[f]or a fourth or subsequent offense within a five (5) year period, [the offender will] be guilty of a Class D felony." KRS 189A.010(5)(d).[2] The question before us is what counts as a predicate offense for purposes of the DUI penalty enhancement provisions. Are predicate offenses limited to those that have resulted in a conviction before the new offense was committed (sometimes referred to as the conviction-to-offense approach), or may any conviction be counted, regardless of when the offense occurred (provided that it did not occur more than five years before the current offense) so long as the conviction was entered prior to the conviction in the current case (sometimes referred to as the conviction-to-conviction approach)? Unfortunately, this Court has rendered opinions suggesting support of both approaches, and thus has given rise to confusion and inconsistent results in the Court

---

1. KRS 189A.010(1) provides that

   (1) A person shall not operate or be in physical control of a motor vehicle anywhere in this state:

   (a) Having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle;

   (b) While under the influence of alcohol;

   (c) While under the influence of any other substance or combination of substances which impairs one's driving ability;

   (d) While the presence of a controlled substance listed in subsection (12) of this section is detected in the blood, as measured by a scientifically reliable test, or tests, taken within two (2) hours of cessation of operation or physical control of a motor vehicle;

   (e) While under the combined influence of alcohol and any other substance which impairs one's driving ability; or

   (f) Having an alcohol concentration of 0.02 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle, if the person is under the age of twenty-one (21).

2. Additional penalty enhancements follow if the case involves "aggravating circumstances," such as "operating a motor vehicle in excess of thirty (30) miles per hour above the speed limit;" or "operating a motor vehicle in the wrong direction on a limited access highway." KRS 189A.010(11).

of Appeals.[3] We accepted discretionary review in this case to clarify how the enhanced penalty provisions of KRS 189A.010(5) should be applied.

### RELEVANT FACTS

This case began on September 14, 2010 when the defendant, Matthew Ballinger, was arrested in Bowling Green and charged with DUI. A record check revealed that Ballinger had been convicted of DUI in April 2003 (offense in March 2003), in October 2004 (offense in May 2004), and in June 2008 (offense in July 2006). Because predicate offenses are limited to those committed within five years of the current offense,[4] by September 2010 the 2003 and 2004 convictions no longer counted as predicates. The 2006 offense did still qualify, though, and accordingly Ballinger was initially charged in the Warren District Court with DUI second offense.

The record check also revealed, however, that in July 2010, Ballinger had twice been charged with DUI in the Barren District Court, one offense in mid-July, it appears, and the other at the end of the month. The Warren County Attorney, therefore, requested that the September Warren County charge be continued pending the outcome of the Barren County proceedings, and she refused several offers by Ballinger to plead guilty to the DUI second offense charge.

On December 20, 2010, Ballinger pled guilty to both of the Barren County charges, whereupon the Commonwealth sought and was given an indictment against Ballinger in Warren County for DUI fourth offense, a felony, the two new Barren County convictions counting, according to the Commonwealth, as Ballinger's second and third predicate convictions. Upon transfer of the matter to the Warren Circuit Court, Ballinger promptly moved to have it sent back to district court, on the ground that the December Barren County convictions were not eligible predicates because they were entered after he committed the September Warren County offense.

The circuit court agreed with Ballinger, citing *Fulcher v. Commonwealth*, 149 S.W.3d 363 (Ky. 2004). *Fulcher* was not a DUI case, but in the course of construing the penalty provisions of KRS 250.991(2), a statute pertaining to the possession of anhydrous ammonia, this Court remarked in a footnote that KRS 189A.010(5) "appears to" adopt the "conviction-to-offense" approach. 149 S.W.3d at 380 n.3. Seizing on this footnote, the circuit court construed

---

**3.** *Cf. Commonwealth v. Brewer*, 2011 WL 2693574 (Ky.App. 2011) (applying conviction-to-offense approach to uphold the dismissal of a DUI second charge where the first conviction did not precede the second offense) with *Anderson v. Commonwealth*, 905 S.W.2d 871 (Ky. App. 1995) (holding that it is the number not the order of the prior convictions that matters); *Smith v. Commonwealth*, 2009 WL 276794 (Ky. App. 2009) (applying conviction-to-conviction approach to uphold DUI fourth conviction even though fourth conviction stemmed from what, chronologically, was only the third offense). *And see Commonwealth v. Beard*, 275 S.W.3d 205 (Ky. App. 2008) (asserting, on the one hand, that "Kentucky has indeed embraced the conviction-to-offense prerequisite for penalty enhancement

purposes in DUI cases," but then, on the other hand, upholding the dismissal of a DUI second charge not because the second offense preceded the first conviction, but rather because the two cases were disposed of simultaneously, making it impossible to say that at the time of the "second" conviction, there existed a prior conviction which could (and, it is suggested, would) bring the conviction-to-conviction approach into play.)

**4.** KRS 189A.010(10) provides that "In determining the five (5) year period under this section, the period shall be measured from the dates on which the offenses occurred for which the judgments of conviction were entered."

KRS 189A.010(5) as a "conviction-to-offense" enhancement statute, under which the two post-offense Barren County convictions could not be used as predicates to enhance Ballinger's September DUI. Thus, the trial court concluded Ballinger could only be charged and convicted of DUI second offense.

The Commonwealth appealed, and the Court of Appeals reversed. In a unanimous opinion, the appellate panel discounted the *Fulcher* footnote as non-binding dicta and relied instead on *Royalty v. Commonwealth,* 749 S.W.2d 700 (Ky. App. 1988), a case in which the Court of Appeals construed an earlier version of KRS 189A.010 as providing for a "conviction-to-conviction" enhancement scheme. In that case, the Court of Appeals upheld a DUI third offense conviction where the enhanced offense occurred prior to the alleged predicate offense, but was still pending when the predicate offense resulted in a conviction.[5] Under the *Royalty* "conviction-to-conviction" scheme, the appellate panel in this case held Ballinger's two Barren County convictions are eligible predicate offenses because the convictions were entered prior to the resolution of the Warren County charge.

*Royalty,* the case upon which the appellate panel relied, relied in turn on this Court's Opinion in *Commonwealth v. Ball,* 691 S.W.2d 207 (Ky. 1985). *Ball* addressed whether the recently enacted KRS 189A.010 (a statute that came into effect in 1984 as part of what was then referred to as "the slammer bill") defined a new crime subject to *ex post facto* restrictions on what could be considered a prior offense, as the defendant maintained, or merely recodified and revised somewhat the already existing crime of driving under the influence, so that prior offenses under former versions of the law would still count as prior offenses under the new version. The Court summed up its holding that KRS 189A.010 did not create a new crime by stating that

> One who has been convicted of engaging in the prohibited conduct of operating a motor vehicle anywhere in this state while under the influence of alcohol in violation of Section (1) of KRS 189A.010, and who has the status *at the time of such conviction* of having been previously convicted within five years of such conviction of driving under the influence, is a previous offender and is subject to the enhancement provisions of Sections (2)(a), (b), and (c) of KRS 189A.010 [Now Section 5(a)-(d) ].

691 S.W.2d at 210 (emphasis added). In *Ball,* that is, the Court suggested that the only relevant question at the time of a DUI conviction with respect to penalty enhancement was the number of prior convictions within the last five years. Offense dates did not matter—the conviction-to-conviction approach controlled. In *Fulcher v. Commonwealth,* however, as noted above, the Court suggested that KRS 189A.010(5) provides for penalty enhancement under a conviction-to-offense approach, a timely offense not counting for enhancement purposes unless the conviction for that offense was entered prior to the commission of the current offense. In the face of these cross signals, it is no surprise that the Court of Appeals has found the question a vexing one.

Ballinger maintains that the Court of Appeals got it wrong in this case by not paying close enough attention to a change the General Assembly made in 1991 to

---

**5.** As explained more fully *infra, Royalty* involved an out-of-sequence offense. This case does not because the Barren County DUI offenses occurred before the Warren County offense.

KRS 189A.010(5). Before then (and still now), although the statute provided for enhanced penalties for second, third, and fourth and subsequent offenses, it nowhere defined what was meant by those terms. In 1991, however, as part of a substantial revision of KRS Chapter 189A, the General Assembly added the following subpart to KRS 189A.010(5):

(e) For purposes of this subsection, prior offenses shall include all convictions in this state, and any other state or jurisdiction, for operating or being in control of a motor vehicle while under the influence of alcohol or other substances that impair one's driving ability, or any combination of alcohol and such substances, or while having an unlawful alcohol concentration, or driving while intoxicated, but shall not include convictions for violating subsection (1)(f) of this section. A court shall receive as proof of a prior conviction a copy of that conviction, certified by the, court ordering the conviction.

KRS 189A.010(5)(e).[6] This remains the current version of KRS 189A.010(5)(e). Ballinger insists that the "new" provision should be understood to say that "prior offenses shall include all convictions in this state, and any other state or jurisdiction [prior to the current offense]." Although the statute does not actually include that last key phrase that appears to be how the courts in *Fulcher, Beard,* and *Brewer,* as well as the Warren Circuit Court in this case, understood it. The courts in *Anderson* and *Smith,* and the Court of Appeals panel in this case, were equally convinced, however, that the plain meaning of "all convictions" in subsection (5)(e), is any conviction for which there is adequate

record support at the time of the new conviction. That is not exactly what the statute says either. So how is the statute to be understood? To answer that question, we begin with the basic principles that guide our interpretation of statutes.

### ANALYSIS

◼ The proper interpretation of Kentucky statutes is an issue of law which we address *de novo. Delphi Auto. Systems, LLC v. Capital Community Economic/Industrial Development Corporation, Inc.,* 434 S.W.3d 481, 485 (Ky. 2014). Our primary goal is to discern the intent of the General Assembly, and we discern that intent, if at all possible, simply from the language the General Assembly chose, either as defined by the General Assembly or as it would ordinarily be understood in the given context. *Commonwealth v. Wright,* 415 S.W.3d 606, 609 (Ky. 2013). We have been enjoined by the General Assembly itself, moreover, to construe its statutes liberally "with a view to promote their objects." KRS 446.080(1). Even so, we are not free, even in the name of fidelity to what might seem the clear legislative purpose, to add to or subtract from the statutory language. *Light v. City of Louisville,* 248 S.W.3d 559 (Ky. 2008) (*citing Beckham v. Bd. of Educ. of Jefferson Cnty.,* 873 S.W.2d 575 (Ky. 1994)). We presume, of course, that the General Assembly did not intend an absurd or an unconstitutional statute or one at odds with other statutory provisions. *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky. 2011); *MPM Financial Grp., Inc. v. Morton,* 289 S.W.3d 193 (Ky. 2009). We also presume that when the General Assembly revises and reenacts a statute, as it did KRS Chapter 189A in 1991, it "is

---

**6.** Subsection (1)(f) outlaws for persons under the age of twenty-one "[h]aving an alcohol concentration of 0.02 or more as measured by a scientifically reliable test or tests of a sam-

ple of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle."

well aware of the interpretation of the existing statute and has adopted that interpretation unless the new law contains language to the contrary. . . . If the legislators intend[ ] to depart from the existing statutory interpretation, it is incumbent that they use 'plain and unmistakable language' which leaves no doubt that a departure from the prior interpretation is intended." *Butler v. Groce,* 880 S.W.2d 547, 549 (Ky. 1994) (*quoting Long v. Smith,* 281 Ky. 512, 136 S.W.2d 789, 791 (1940), and *citing Brown v. Harrodsburg,* 252 S.W.2d 44, 45 (Ky. 1952) (When the legislature "substantially re-enacts [a] statute, it will be deemed to have adopted the construction theretofore placed upon the statute by the court unless the contrary is clearly shown by the language of the new enactment.")).

■ When, as is not infrequently the case given language's inherent slipperiness, the legislative intent is not perfectly apparent from the statute alone, we have recourse to the statutory context; to the legislative history, if there is any; to the "historical settings and conditions out of which the legislation was enacted," *Commonwealth v. Howard,* 969 S.W.2d 700, 705 (Ky. 1998); to the canons of statutory construction; and to such other interpretive aids as may be appropriate in the given case. *Delphi Automotive Sys.,* 434 S.W.3d at 485 (referring in a Uniform Commercial Code case to the Code's official comments), *Brown v. Commonwealth,* 174 S.W.3d 421 (Ky. 2005) (referring in a murder case to the Commentary to the Penal Code); *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512 (Ky. 2006) (referring in a case involving Kentucky's version of a model Act to interpretations of the Act in other adopting jurisdictions).

■ Applying these principles here, we note initially that KRS 189A.010(5) does not, on its face, make perfectly clear what

counts as a predicate offense for penalty enhancement purposes. Subsection (5)(e)'s definition of "prior offenses" as including "all convictions in this state, and any other state or jurisdiction, for [DUI]" neither says nor implies that a qualifying conviction must have preceded the commission of the current offense, but neither, on the other hand, does the language "prior offenses shall include all convictions" make clear that any conviction occurring before the present one is a prior offense. The ambiguity is all too well reflected in the conflicting opinions discussed above. For at least a couple of reasons, however, we are convinced that the Court of Appeals, in this case at least, correctly construed the statute as including among the convictions giving rise to enhanced penalties all duly certified DUI convictions (for offenses committed within five years prior to the current offense) entered against the defendant prior to his conviction in the current case, even if some of those convictions were not yet entered at the time of the current offense.

■ In the first place, a clear purpose of the DUI statutes, generally, is to protect the public from the serious risk of injury and property damage posed by impaired drivers. *Howard,* 969 S.W.2d at 700, 704 (noting the public safety interest meant to be furthered by "laws which prohibit persons from driving while intoxicated"). As the Court noted in *Butler v. Groce, supra,* the General Assembly has sought to protect this public interest in two related ways: criminal sanctions under KRS 189A.010(5) and license suspensions under KRS 189A.Q70(1). As do the criminal sanctions, the suspensions become graver with each repeated offense, up to a five-year suspension for a fourth or subsequent offence within a five-year period. In *Butler,* the Court held that for license suspension purposes, the length of the sus-

pension was to be determined not by how the offense had been characterized by the trial court, but simply by the number of convictions already of record at the time of the new conviction.

KRS 189A.070(1)(e) provides that "offense" is to have the same meaning under both KRS 189A.070(1), the license suspension statute, and KRS 189A.010(5), the criminal sanctions statute. A prior offense under the latter statute, therefore, to be consistent with *Butler's* construction of KRS 189A.070(1), would also be any conviction of record (within the five-year time limit) at the time of the new conviction— even if one or more of the record convictions had not been entered at the time of the current offense, the circumstance presented in this case. This approach is true to the statutory directive that "prior offenses shall include *all* convictions" for qualifying offenses at the time of the current conviction; it harmonizes the related statutes KRS 189A.010(1) and KRS 189A.070(1); and it is in keeping with the statutory purpose of protecting the public from impaired drivers.

It is not quite, however, the full-blown conviction-to-conviction approach of *Ball* and *Royalty*. In *Royalty*, as noted, under a prior version of KRS 189A.010, the Court of Appeals affirmed a conviction for DUI third offense where two of the defendant's offenses were resolved out of order. What was chronologically the defendant's second offense did not result in a conviction until after the defendant had been convicted of what chronologically was his third offense.[7] The defendant argued that notwithstanding the conviction for the subsequent offense, what was in fact a second offense at the time of commission could not

be punished as a "third." Rejecting that argument, the Court of Appeals relied on the language from *Ball* quoted above to the effect that for DUI enhancement purposes the relevant question was not the order of prior offenses but only the number of prior convictions, *i.e.*, whether at the time of the current conviction the defendant had "been previously convicted within five years of such conviction of driving under the influence." *Ball*, 691 S.W.2d at 210.

*Royalty* was decided in 1988. As Ballinger notes, in 1991 the General Assembly made a number of revisions to KRS Chapter 189A, including two which, because they seem responsive to *Ball* and *Royalty*, are of particular pertinence here and provide a second reason for affirming the result in this case.

In *Ball*, the Court had said that a "previous offender" was a person who, at the time of his or her current conviction had, "within five years of such *conviction*" been previously convicted. The General Assembly amended the statute in 1991 to say, contrary to *Ball*, that "In determining the five (5) year period under this section, the period shall be measured from the dates on which the *offenses* occurred for which the judgments of conviction were entered" (now KRS 189A.010(10)).

The 1991 General Assembly also added the provision, noted above (KRS 189A.010(5)(e)), explaining that "*prior* offenses shall include all convictions in this state, and any other state or jurisdiction, for [DUI]." Contrary to *Royalty*, this provision and certainly the two provisions together indicate that to some extent the sequence of offenses matters. Specifical-

---

7.  The Breckinridge County conviction appealed in *Royalty* was entered November 10, 1986 for a DUI offense that had occurred eighteen months earlier on May 11, 1985. During that

eighteen-month period, Royalty, who already had a 1982 DUI conviction, was cited for DUI in Jefferson County on February 14, 1986 and convicted on April 21, 1986.

ly, the General Assembly has expressed its intent that predicate offenses for DUI enhancement purposes must be "prior" offenses—offenses occurring within the five years immediately preceding the commission of the current offense—and furthermore, as the statute goes on to say, predicate offenses include *all* such prior offenses which have resulted in conviction by the time of the current conviction. Thus, neither the "conviction-to-offense" nor the "conviction-to-conviction" approach is accurate under the current statutory scheme. Instead there is a two-part inquiry. First, was the alleged predicate offense committed within the five-year period preceding the commission of the current offense? If the answer is "yes," the next question is simply whether the conviction for that prior offense was entered prior to the defendant's conviction for the current offense by either guilty plea or verdict. Both inquiries must be answered affirmatively in order for the prior offense to qualify as a predicate offense for an enhanced DUI.

The facts of this case satisfy the two-part test. Ballinger's two July Barren County offenses were committed shortly before his September Warren County offense, and reduced to convictions in December 2010. Should the Warren County proceeding result in a conviction, the convictions for the Barren County offenses may be counted for enhancement purposes, resulting in a DUI fourth offense.

Ballinger would give even more significance to the General Assembly's addition in 1991 of the definition of "prior offense," and would have us read into it: "prior offenses shall include all convictions [prior to the current offense]." The General Assembly stopped, however, with "all convictions" for which certified copies could be shown. While not a complete endorsement of the *Ball/Royalty* approach, the 1991 amendments were not, as Ballinger would have it, a complete rejection of it, either. The statute requires that a predicate DUI *offense* be prior to the current offense, but it does not require that the predicate *conviction* be prior to the new offense, and we are not at liberty to make additions to the statute. Under KRS 189A.010(1) as it currently stands, the Court of Appeals correctly determined that Ballinger is subject to prosecution for DUI fourth offense.[8]

Against this conclusion, Ballinger relies on the footnote referred to above from *Fulcher v. Commonwealth.* In that case the defendant was convicted, among other things, of two counts each of possession of anhydrous ammonia in an unapproved container (outlawed by KRS 250.489(1)) and possession of drug paraphernalia (outlawed by KRS 218A.500(2)), the charges arising from two separate instances of the two crimes. 149 S.W.3d at 367–72. KRS Chapters 250 and 218A both provide for enhanced penalties for subsequent offenses, and enhanced penalties were imposed for the second of each offense. The defendant maintained that the enhancements were improper because in neither instance did the second offense follow a prior conviction. The Court agreed that both enhancements were improper, but

---

**8.** We realize that as we here construe it the statute leaves open the possibility that DUI offenses could be prosecuted out of order and a subsequent offense be under-punished as a result. That possibility is one of the things that led the *Royalty* Court to reject a sequentiality requirement. The General Assembly appears to have recognized the risk that a sequentiality requirement might be abused and has attempted to minimize the risk by encouraging the prompt processing of DUI cases. See KRS 189A.330 (requiring court clerks to report to the Administrative Office of the Courts DUI cases that have been pending for more than ninety days).

found that they were improper for different reasons.

With regard to the second paraphernalia charge penalty, the Court noted that in KRS Chapter 218A an offense was to be deemed "subsequent" if "prior to his conviction of the offense, the offender has at any time been convicted under this chapter." KRS 218A.010(41). This, the Court stated, was a codification of the *Ball/Royalty* conviction-to-conviction approach to subsequent offenses. 149 S.W.3d at 380–81. Even under that approach, however, because the two paraphernalia charges were tried jointly, neither conviction could be said to have preceded the other.

With respect to the enhanced penalty for the second anhydrous ammonia charge, the Court noted that while KRS 250.991(2) provided for enhanced penalties for a "subsequent offense," nowhere in Chapter 250 was the term "subsequent offense" defined. "[I]n that circumstance," the Court said, "we have always interpreted such language to require a conviction-to-offense sequence, *i.e.*, the second offense must occur after conviction of the first offense." 149 S.W.3d at 380. The Court cited cases (*Coleman v. Commonwealth*, 276 Ky. 802, 125 S.W.2d 728 (1939) and *Brown v. Commonwealth*, 100 Ky. 127, 37 S.W. 496 (1896)) that construed habitual offender statutes, predecessor to the current persistent felony offender (PFO) provisions, and a case (*Denham v. Commonwealth*, 311 Ky. 320, 224 S.W.2d 180 (1949)) construing a local option law. It was at this point that the Court entered a footnote observing that KRS 532.080(2) and (4), the PFO statutes, are still understood to require the conviction-to-offense approach, and also stating that "The General Assembly also appears to have adopted the conviction-to-offense sequence for subsequent offense enhancement of operating a motor vehicle while impaired. KRE 189A.010(5)(e) (de-

fining prior offenses as 'all convictions' obtained prior to the subsequent offense)." 149 S.W.3d at 380 n.3.

As the Court of Appeals panel noted, the footnote in *Fulcher* is dicta and therefore is not binding. And as we have explained above, we cannot accept the *Fulcher* Court's reading into KRS 189A.010(5)(e) the words "obtained prior to the subsequent offense." Those words appear in the *Fulcher* footnote but the statute simply does not say that. *Cf. Commonwealth v. Derringer*, 386 S.W.3d 123 (Ky. 2012) (discussing KRS 532.080 and its requirement that for PFO status an offender must not only have a prior offense, but must have a "previous felony conviction," a requirement we have always understood to indicate the "conviction-to-offense" approach to sentence enhancement for repeat offenders). The statute says that in setting a penalty, *i.e.*, upon conviction, the court is to consider as "prior offenses" "all [DUI] convictions," then of record, and we, again, are not at liberty to add limitations the General Assembly did not include.

We also disavow the *Fulcher* Court's suggestion that in the absence of an expressly contrary definition, such as the one in KRS 218A.010(41), there is a presumption that subsequent offense enhancement statutes intend the persistent felony offender-type conviction-to-offense approach. The justification for that approach under the habitual criminal/persistent offender statutes was explained in 1896 by this Court's predecessor in *Brown v. Commonwealth*, 37 S.W. at 496, as follows:

The statute was manifestly intended to provide an increased penalty for a subsequent offense, in order to deter the offender from its repetition. After punishment is imposed for the commission of a crime, the double penalty is held *in terrorem* over the criminal, for the purpose of effecting his reformation, and

preventing further and subsequent offenses by him. So we find that for a third offense the punishment of imprisonment for life is provided by the act, upon the theory, doubtless, that he must then be regarded as incorrigible. The reformatory object of the statute, namely, to provide a deterrent from future crime, would not be effected by a construction which gives to the offender no opportunity to reform.

*See also, Bray v. Commonwealth,* 703 S.W.2d 478 (Ky.1985) (reaffirming this rationale for the conviction-to-offense approach to PFO sentencing).

Where the enhanced penalties can be a doubled sentence or life in prison—terror indeed—as is still the case under KRS 532.080, this focus on the offender and the concern that he or she not be so severely punished without ample warning and sufficient opportunity to reform makes good sense. There are dozens of statutes, however, providing for enhanced penalties for repeated violations or offenses. And while all of them are no doubt meant to deter repeat offenders, there is no reason to suppose that reformation is the, or even a, main purpose of them all. Cynthia L. Sletto, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes,* (noting the wide variety of and rationales for different types of repeat-offender enhancement statutes). Some, and we believe KRS 189A.010 is a clear example, are more aimed at protecting people or property from socially useless and highly dangerous risks. Impaired driving is a threat to everyone traveling Kentucky's highways, and a driver who drives intoxicated needs no warning to know he will be punished to the full extent of the law. That is the result of the Court of Appeals' reading of KRS 189A.010(5)(e), a reading in which, under the facts of this case, we concur.

Finally, an additional issue not raised by the parties but clearly lurking in the record of this case is the effect of Ballinger having pled to two separate DUI offenses in Barren District Court on the same day. In *Beard,* 275 S.W.3d at 208, the Court of Appeals lamented what it perceived as a requirement that it treat two separate DUI offenses as one offense if the convictions for both were entered "virtually simultaneously." That court observed that "[p]ublic policy appears to be ill served by the outcome of this case" wherein the timing of the convictions allows the "penalty provisions [to be] effectively circumvented." *Id.* The *Beard* court aptly referred to the practice of allowing a DUI defendant to plead guilty to multiple DUI charges in one plea as "bundled." However, *Beard,* relying heavily on *Royalty* (which predates the 1991 revisions to the statute) and not citing KRS 189A.010(1) (which focuses on the dates of the offenses), also concluded that Kentucky DUI law embodies a "conviction-to-offense" approach, a position we now reject based on a full reading of KRS 189A.010. Under the statute as it now stands with its focus on both convictions and "the dates on which the offenses occurred," KRS 189A.010(10), and in light of this Court's *Butler v. Groce* directive that the actual number of prior DUI offenses controls, as opposed to how a court may have labeled or handled those prior offenses, we see no sound basis for concluding that the bundling of separate DUI offenses into one guilty plea or one trial should interfere with the clear intent of the statute that repeat offenders suffer progressively more serious consequences for each separate offense.

Unlike the paraphernalia statute in *Fulcher,* which expressly provided that an offense was to be deemed "subsequent" if

"prior to his conviction of the offense, the offender has at any time been convicted under this chapter," KRS 218A.010(41), the DUI statute has no subsequent-offender definition. Instead, it prescribes the two-part inquiry that we have outlined. That two-part inquiry also distinguishes DUI offenses from the subsequent anhydrous ammonia charge in *Fulcher*, where this Court elected to adopt the conviction-to-offense approach applicable to PFO charges. While *Fulcher* still controls for the specific drug statutes at issue there, it has no bearing on the DUI statute. Simply put, a defendant cannot avoid the plainly intended consequences of multiple instances of DUI in the relevant five-year period by simply entering a "bundled" plea which results in a single judgment. Thus, Ballinger is properly subject to a DUI fourth offense charge even though the convictions for his second and third DUI offenses were entered the same day.[9]

### *CONCLUSION*

In sum, even though Ballinger's December 2010 convictions for two July 2010 Barren County DUI charges had not been entered at the time he committed the September 2010 DUI offense in Warren County, at the time of his January 2011 Warren County indictment they had become of record and they are eligible as predicate offenses should the Warren County proceeding result in a conviction. The Court of Appeals having so held, we hereby affirm that Court's decision and remand for further proceedings consistent with this Opinion.

9.  As noted, the Barren District Court accepted a plea and entered a single judgment for the two separate July 2010 DUI offenses. That court treated the combined offenses as a single DUI second offense, when in fact they were a DUI second offense and DUI third offense. We note this to emphasize that, if

All sitting. All concur, except Keller, J., not sitting. Noble, J., concurs by *separate* opinion.

NOBLE, J., CONCURRING:

I fully concur with Justice Abramson's majority opinion. However, I would further point out, for the benefit of practitioners, especially prosecutors, that what we are saying today is that, in effect, *all* DUI charges are simply a charge of DUI until there is a guilty plea or adjudication of being guilty of driving under the influence. At that point, under this opinion, any conviction entered before the penalty phase of the trial is admissible to prove the degree of DUI, or in taking a guilty plea.

convicted, Ballinger's status is to be determined under the two-part inquiry, and thus he is properly subject to a DUI fourth offense even though his record does not reveal a conviction for DUI third offense, given the manner in which the Barren County offenses were handled.